NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLIFTON CLARKE, | : |
| Plaintiff, | : Civil Action No. 03-3240 (SRC) |
| v. | : |
| | : OPINION |
| NEW JERSEY STATE POLICE, et al., | : |
| Defendants. | : |

**CHESLER**, District Judge

    This matter comes before the Court upon the motion for summary judgment filed by Defendants Juan Colon, Cesar Huaman, Kenneth Pilanski, Nicholas Monticello, and Michael Daniele, all New Jersey State Troopers (collectively, "Defendants")[1] [docket item #76], subsequent to a limited remand by the United States Court of Appeals for the Third Circuit [docket item #26]. The Court has considered the parties' submissions in support of and in opposition to this motion, and, pursuant to Federal Rule of Civil Procedure 78, rules on the motion based on the papers submitted. For the reasons that follow, the Court grants Defendants' motion for summary judgment in its entirety.

---

[1] This case's caption also names the New Jersey State Police and the State of New Jersey as Defendants; however, in a portion of the Court's Order on Defendant's Motion to Dismiss [docket item #20] that was upheld by the Court of Appeals, Judge Lifland dismissed all claims against the State of New Jersey, the Division of State Police, and the Superintendent of the Division of State Police. Mem. & Order Granting Mot. to Dismiss, Dec. 8, 2004 at 9-12.

**I.  BACKGROUND**

In this case, the Court must determine whether Plaintiff's claims are precluded by the statute of limitations.  The underlying dispute stems from a traffic stop on the New Jersey Turnpike on March 17, 1998 where Defendant Colon stopped a car in which Plaintiff Clifton Clarke ("Plaintiff") was a passenger.  (Defs.' Statement of Undisputed Material Facts 1-2 ("Defs.' Facts").)  Both the driver and Plaintiff were black males.  (Defs.' Facts 2.)  Defendant Colon testified in his deposition that he pulled the car over for failure to maintain its lane, and he subsequently issued two motor vehicles summonses.  (Defs.' Facts 2-3.)  Upon suspicion of the driver being inebriated, the car's registration showing an owner other than the driver despite the driver's assertions of ownership, and the passenger's nervous appearance, Defendant Colon testified that he asked the driver to step out of the vehicle.  (Defs.' Facts 3-4.)  Defendant Huaman arrived at this point as routine backup, and additional troopers arrived thereafter.  (Defs.' Facts 4-5).  Defendant Colon testified that, after receiving inconsistent and evasive answers from the driver and the passenger about where they were coming from and other topics, he requested the driver's consent to search the vehicle, and consent was given orally and in writing.  (Defs.' Facts 5-8.)  He also testified that he discovered two kilos of cocaine and under 50 grams of marijuana during his search of the vehicle.  (Defs.' Facts 9.)  At this point, both Plaintiff and the driver were arrested and charged with possession of CDS/cocaine with intent to distribute.  (Defs.' Facts 9.)

Plaintiff was indicted in Union County, New Jersey on July 24, 1998 for possession of CDS and possession of CDS with intent to distribute.  (Defs.' Facts 12; Defs' Mot. for Summ. J. Ex. 1 (Indictment).)  Prior to his trial, Plaintiff argued a Motion to Suppress on October 26-28,

2

1999 before the Law Division of the Superior Court of New Jersey claiming that he was a victim of racial profiling; the motion was denied.  (Defs.' Facts 12; Defs' Mot. for Summ. J. Ex. 2.) Following a jury trial, Plaintiff was convicted and sentenced on November 18, 1999 to 17 years of imprisonment with five years of parole ineligibility.  (Defs.' Facts 12; Defs' Mot. for Summ. J. Ex. 3 (J. of Conviction)).  Plaintiff's conviction was then vacated and the indictment against him dismissed with prejudice on May 3, 2002.  (Pl.'s Opp. to Defs.' Mot. for Summ. J. Ex. C.) Plaintiff filed the action presently under review on July 9, 2003.

Plaintiff initiated this action under 42 U.S.C. §§ 1983, 1985(2)(3), and 1988(a)(b) alleging violation of his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (Compl. ¶ 1.)  Plaintiff also alleged the additional state law claims of assault and battery, false arrest, false imprisonment, malicious prosecution, emotional harm, and wrongful incarceration.  (Compl. ¶¶ 30-46.)  The Court dismissed Plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 8, 2004 [docket item #20].  Plaintiff appealed, and, on November 10, 2005, the Court of Appeals for the Third Circuit granted a limited remand "as to [d]ismissal of [a]ppellant's Fourth Amendment [f]alse [a]rrest [c]laim and Fourteenth Amendment [s]elective [e]nforcement [c]laim as barred by the [s]tatute of [l]imitations" [docket item #26].

Despite Plaintiff's wide-ranging arguments, whether Plaintiff's false arrest and selective enforcement claims are barred by the statute of limitations and, if they are not, the substantive claims themselves, are the only issues before this Court.  Specifically, Plaintiff alleges that Defendants violated his rights under the Fourth Amendment to the United States Constitution by subjecting him to a false arrest and violated his rights under the Fourteenth Amendment by

3

engaging in selective enforcement in the form of unlawful racial profiling surrounding his arrest.[2] (See Compl. Counts 1, 3.)  However, the Court need not reach the substantive issues; instead, it finds that Plaintiff's claims are barred by the statute of limitations as clarified by the Supreme Court's recent decision in Wallace v. Kato, 127 S. Ct. 1091 (2007).

## II.    LEGAL ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  Boyle v. County of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus.

---

[2] The Court notes that Plaintiff's brief in opposition of Defendants' motion for summary judgment fails to comply with L.Civ.R. 7.2 in that it does not contain a table of contents or a table of authorities.  In the interest of justice, the Court will waive those requirements; however, counsel is advised to consult the Local Civil Rules in conjunction with any further submissions in this or other matters.

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 247-48.  Pursuant to Federal Rule of Civil Procedure 56(e), the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("[t]o raise a genuine issue of material fact, . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant[,]" but rather must "exceed[] the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

**B.      Discussion**

1.      Statute of Limitations on Fourth Amendment Claim of False Arrest

Whether Plaintiff's false arrest claim is  time-barred depends on what event triggered the statute of limitations.[3]  As stated above, Plaintiff's claims emanate from a traffic stop and subsequent arrest on March 17, 1998.  On July 24, 1998, Plaintiff was indicted in state court for third degree possession of a controlled dangerous substance and first degree possession of a controlled dangerous substance with the intent to distribute in a quantity of five ounces or more.  He was then convicted on both counts on January 26, 2000, but the convictions were vacated and the indictment dismissed on May 3, 2002.  Plaintiff did not bring this action until July 9, 2003.

---

[3]Although Plaintiff brings this action under 42 U.S.C. §§ 1983, 1985(2)(3), 1988(a)(b), and numerous Amendments to the Constitution, Plaintiff, who is not pro se, is unclear in his brief or his complaint which statutes he seeks relief under for his individual claims.  See Mem. & Order Granting Mot. to Dismiss, Dec. 8, 2004 at 4 n.2 (explaining the difficulty in interpreting Plaintiff's complaint and that, generally, plaintiffs cannot bring claims under both § 1983 and directly under the Constitution due to redundancy). This Court only addresses Plaintiff's false arrest claim under 42 U.S.C. § 1983, as the other statutes do not appear to apply to his allegations.

Plaintiff makes no allegation of having filed an earlier action asserting similar claims to those addressed herein, although he did raise these claims on October 26-28, 1999 in an unsuccessful motion to suppress related to his state court trial.

To determine the limitations period for § 1983 actions, federal courts rely on the applicable state's statute of limitations period for personal injury torts. Wallace, 127 S. Ct. at 1094. Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J.S.A. 2A:14-2, governs Plaintiff's claims. Montgomery v. DeSimone, 159 F.3d 120, 126 n.4 (3d Cir. 1998). New Jersey's statute of limitations states that "[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued[.]" N.J.S.A. 2A:14-2. Along with applying a state's limitations period, federal courts also rely on the relevant state's provisions for the "closely related questions of tolling and application[.]" Wilson v. Garcia, 471 U.S. 261, 269 (1985); see Wallace, 127 S. Ct. at 1095 (applying a state's tolling provision in calculating whether its statute of limitations had run).

New Jersey statutes set forth certain bases for "statutory tolling." See, e.g., N.J.S.A. 2A:14-21 (detailing tolling due to minority or insanity); N.J.S.A. 2A:14-22 (detailing tolling due to nonresidency of persons liable). New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass[,]" "where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights[,]" or "where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted) (App. Div.), certif. denied, 172 N.J. 178 (2002); Bernoskie v. Zarinsky, 383 N.J. Super.

127, 135-36 (App. Div.), certif. denied, 186 N.J. 604 (2006). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Freeman, 347 N.J. Super. at 31; Zarinsky, 383 N.J. Super. at 135-36.

Additionally, "[w]hen state tolling rules contradict federal law or policy, in certain limited circumstances [federal courts] can turn to federal tolling doctrine." Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, "[e]quitable tolling is appropriate in three general scenarios":

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum."

Id. at 370 n.9.

Despite the reliance on state law for the statute of limitations itself and tolling, "the accrual date of a §1983 cause of action is a question of federal law[.]" Wallace, 127 S. Ct. 1095. In Fourth Amendment claims based on allegations of false arrest or false imprisonment, "[r]eflective of the fact that false imprisonment[4] consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process--when, for example he is bound over by a magistrate or arraigned on charges." Id. at 1096. Therefore, the Supreme Court held in Wallace "that the statute of limitations on petitioner's §1983 claim

---

[4] In Wallace, the Supreme Court used the term "false imprisonment" to refer to both false imprisonment and false arrest. Id. at 1095.

commenced to run when he appeared before the examining magistrate and was bound over for trial." Id.

The rule announced in Wallace is a departure from prior Supreme Court and Third Circuit precedent. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a plaintiff's claim is not barred by the statute of limitations if, were it to be successful, it would render the underlying criminal conviction or imprisonment invalid; under those circumstances, the cause of action does not arise "until the conviction or sentence has been invalidated." Id. at 487. The Third Circuit applied the Heck deferred accrual rule in Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety, 411 F.3d 427 (3d Cir. 2005) (Gibson I). There, the Circuit Court noted that "Heck does not set forth a categorical rule that all Fourth Amendment claims accrue at the time of the violation." Id. at 450. Instead, the Court required that District Courts engage in a "fact-based inquiry into whether a Fourth Amendment claim implies the invalidity of the underlying conviction." Id. at 448, 449. Wallace explicitly rejected Heck's approach in the context of false arrest cases. The Supreme Court stated that, in order to defer accrual of the claim, it would need to extend the Heck principle to state "that an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside." Wallace, 127 S. Ct. 1098. Finding such a principle to be impracticable, the Court held that it was "not disposed to embrace this bizarre extension of Heck." Id.

The Third Circuit's reasoning in Gibson I does not survive the Supreme Court's language in Wallace. See, e.g., Nicholas v. Heffner, 228 F. App'x 139, 141 (2007) (applying Wallace as to Fourth Amendment false arrest/imprisonment claim accrual); Richards v. County of Morris, 2007 U.S. Dist. LEXIS 49290 at 15-16, 2007 WL 1412282 (D.N.J. July 5, 2007) ("Wallace effectively

supercedes the Third Circuit's reasoning in Gibson[I] . . . and Heck is inapplicable [to the allegations of Fourth and Fourteenth Amendment violations by false arrest, false imprisonment, racial profiling, and unlawful search and seizure]"); Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety, 2007 U.S. Dist. LEXIS 22871 at 13-15, 2007 WL 1038920 (D.N.J. Mar. 29, 2007) (Gibson II) (finding that Wallace supercedes the Third Circuit's approach to false arrest cases under Heck as articulated in the 2005 decision in Gibson I, 411 F.3d 427). Therefore, Heck does not apply to Plaintiff's claims, and the statute of limitations began to run upon the beginning of legal process stemming from his arrest.

Here, the underlying traffic stop and subsequent search that gave rise to Plaintiff's false arrest claim occurred on March 17, 1998, with the legal processes attendant to that arrest occurring soon after, although not documented on the record. This case was not commenced until July 9, 2003. Plaintiff's claims, having been filed almost five years after the incident at issue, are therefore time-barred under New Jersey's two-year statute of limitations.[5]

Furthermore, Plaintiff makes no allegations of fact or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law. His only statement regarding the statute of limitations issue is that the "[Heck] bar is inapplicable to [Plaintiff's] situation, as this is not a simple case fo false arrest." (Pl.'s Br. at 22.) In light of the lack of any "showing of intentional inducement or trickery by a defendant" or other circumstances that require the application of equitable tolling as "demanded by sound legal principles as well as the interests of justice[,]" this Court declines to apply equitable tolling to

---

[5]Plaintiff was indicted on July 24, 1998; even if that were the first legal process which Plaintiff was afforded, the two-year statute of limitations expired in July 2000, approximately three years prior to the filing of this lawsuit.

Plaintiff's claims. See Freeman, 347 N.J. Super. at 31; see also Lake, 232 F.3d at 370 n.9 (detailing when equitable tolling is proper under federal law).

As Plaintiff's Fourth Amendment claim is resolved on an issue of law, no issue of material fact remains. Therefore, "the moving party is entitled to a judgment as a matter of law" regarding Plaintiff's false arrest claim. See Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 248; Kreschollek, 223 F.3d at 204.

### 2. Statute of Limitations on Fourteenth Amendment Claim of Selective Enforcement

The second issue on remand from the Court of Appeals is whether Plaintiff's selective enforcement claim[6] was properly dismissed as time-barred. Defendants allege that the statute of limitations has run on Plaintiff's claim and also argue that the claim is substantively insufficient to overcome summary judgment. Plaintiff's argument is less clear; he focuses on allegations of

---

[6] In his complaint, Plaintiff alleges selective enforcement in violation of the Fourteenth Amendment only in the alleged racial profiling leading to the March 17, 1998 traffic stop, the search of the vehicle in which he was a passenger, and his subsequent arrest. No allegations of selective enforcement at any later stage in the chain of events, such as claims of selective prosecution, are made. A selective prosecution claim requires that a claimant meet the high burden of "demonstrat[ing] that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.' To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." United States v. Armstrong, 517 U.S. 456, 465 (1996) (citations omitted). This must be done through the claimant offering "'some evidence tending to show the existence of the essential elements of' a selective-prosecution claim." Id. at 470 (citation omitted). In his complaint, Plaintiff makes no such allegations nor does he offer any evidence in support of a selective prosecution theory. This Court will therefore only address selective enforcement as it relates to the March 17, 1998 traffic stop, search, and arrest.

Additionally, although a malicious prosecution claim, an entirely different cause of action, was raised in Plaintiff's complaint, that claim was dismissed by Judge Lifland in his December 8, 2004 memorandum and order dismissing this case and was not included in the Third Circuit's limited remand. Mem. & Order Granting Mot. to Dismiss, Dec. 8, 2004 at 24-27. That issue is therefore not before this Court.

10

conspiracy under 42 U.S.C. §1985 and state law and attempts to introduce new evidence at this stage in the proceeding. Pl.'s Br. in Opp. to Summ. J at 2, 6-35. It seems that the core of Plaintiff's assertion is that the statute of limitations has not yet started to run since the alleged selective enforcement, in the form of racial profiling by the State Police, is an ongoing conspiracy, and "[t]he statute of limitations applies once the conspiracy ceases activity, not before." Id. at 30. The Court of Appeals remand regarding Plaintiff's Fourteenth Amendment selective enforcement claim was solely as to whether the claim was barred by the statute of limitations; the allegations of general conspiracy and violation of 42 U.S.C. § 1985 are not before this Court.

As explained above, the statute of limitations that federal courts use for claims brought under 42 U.S.C. § 1983 is the applicable state's statute of limitations for personal injury actions. Wallace, 127 S.Ct. at 1094. In New Jersey, that period is two years from the date of accrual. Montgomery, 159 F.3d at 126 n.4; N.J.S.A. 2A:14-2.

No binding precedent exists on whether Wallace v. Kato, 127 S. Ct. 1091, affects when the statute of limitations on selective enforcement claims begins to run. As discussed above, under Wallace, which only directly addressed Fourth Amendment false arrest claims, id. at 1094 n.1, "the statute of limitations upon a §1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Id. at 1100. The Court deemed this the appropriate time, because it was when the claimant had a complete cause of action: "the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the

11

full extent of the injury is not then known or predictable." Id. at 1097.  Furthermore, the Court reasoned that that "[d]efendants need to be on notice to preserve beyond the normal limitations period evidence that will be needed for their defense; and a statute that becomes retroactively extended, by the action of the plaintiff in crafting a conviction-impugning cause of action, is hardly a statute of repose." Id. at 1099.

In 2005, the Third Circuit determined that the statute of limitations does not begin to run on a selective enforcement claim until the Plaintiff's conviction is vacated due to the Heck deferred accrual rule.  Gibson I, 411 F.3d at 441 ("Because a successful claim of selective enforcement under the Fourteenth Amendment Equal Protection Clause would have necessarily invalidated [Plaintiff's] conviction, under the Heck deferred accrual rule the statute of limitations did not begin to run until his sentence was vacated . . . .").  However, subsequent to the Supreme Court's 2007 decision in Wallace, this Court has conflicted, in unpublished decisions, on the accrual date of a selective enforcement or other Fourteenth Amendment equal protection cause of action; no opinions on the topic have been published.  See, e.g., Gibson II, 2007 U.S. Dist. LEXIS 22871 at 15-16 (finding, post-Wallace, that the selective enforcement analysis in Gibson I did not change; accrual occurs upon vacation of the conviction); but see, e.g., Richards, 2007 U.S. Dist. LEXIS 49290 at 15-16 (holding that, under Wallace, Fourteenth Amendment due process and equal protection claims accrue at the time of arrest).

In Gibson II, Judge Kugler distinguished the Supreme Court's holding in Wallace as applying only to Fourth Amendment claims in determining that the Heck deferred accrual rule applied to a selective enforcement claim.  2007 U.S. Dist. LEXIS 22871 at 15-16.  This Court respectfully departs from that determination and finds that Wallace applies to the Fourteenth

12

Amendment selective enforcement claim presently under review.  See Wallace, 127 S. Ct. at 1096-97.  In this case, the allegations of selective enforcement in the form of racial profiling are limited to the March 17, 1998 traffic stop, search, and arrest.  Plaintiff first sustained damages upon the stop, search, and arrest; knowledge of the full extent of injury is explicitly not required under Wallace.  See Wallace, 127 S. Ct. at 1097.  Plaintiff knew of his cause of action at this point and was capable of pursuing relief.  The Supreme Court's additional rationale in limiting the Heck deferred accrual rule in Wallace in order to allow "[d]efendants . . .  notice to preserve beyond the normal limitations period evidence that will be needed for their defense[,]" id. at 1099, is also applicable in this situation.  The selective enforcement action's accruing at the time of arrest also accords with the general tort principal highlighted in Wallace that, ordinarily, tort actions accrue "when the wrongful act or omission results in damages[,]" not when the damages are complete.  Wallace, 127 S. Ct. 1094.  Therefore, the tort action for selective enforcement accrues upon the search and arrest that was allegedly made pursuant to selective enforcement of the law.  See, e.g., Richards, 2007 U.S. Dist. LEXIS 49290 at 15-16.

Plaintiff was arrested on March 17, 1998, and his claim accrued at this point.  Under New Jersey's statute of limitations, he had two years from that date to file his claims.  As Plaintiff brought the instant action on July 9, 2003, his Fourteenth Amendment selective enforcement claim is time-barred.  Neither equitable nor statutory tolling can save his claim, as Plaintiff makes no allegations of fact or extraordinary circumstances that would permit this Court to impose such tolling under either New Jersey or Federal law.  See Lake, 232 F.3d at 370; Bernoskie, 383 N.J. Super. at 135-36; Freeman, 347 N.J. Super. at 31.

Plaintiff's Fourteenth Amendment claim is therefore resolved on an issue of law, and no

13

issue of to material fact remains. As such, "the moving party is entitled to a judgment as a matter of law" regarding Plaintiff's selective enforcement claim. See Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 248; Kreschollek, 223 F.3d at 204.

### IV.     CONCLUSION

For the foregoing reasons, this Court grants Defendants' motion for summary judgment, dismissing with prejudice Plaintiffs' Complaint in its entirety, as against all Defendants. An appropriate form of order will be filed together with this Opinion.

                                                                                                s/ Stanley R. Chesler  
                                                                                                STANLEY R. CHESLER  
                                                                                            United States District Judge

DATED: December 20, 2007